UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Donald J. Coon,

      Plaintiff,

      v.                                              Civil Action No. 2:13-cv-182

Southwestern Vermont Medical Center,
Shea Family Funeral Homes,
Lon McClintock, Esq.,

      Defendants.

## OPINION AND ORDER
(Docs. 105, 116)

On June 25, 2013, Plaintiff Donald J. Coon, proceeding *pro se*, commenced this action against several Defendants, including Defendant Shea Family Funeral Homes ("Shea").  Mr. Coon's claims stem from the death of his mother, Joan Marie Hunt, while Ms. Hunt was a patient at the Southwestern Vermont Medical Center ("SVMC"); from Shea's actions following Ms. Hunt's death; and from Attorney Lon McClintock's alleged breach of duties he owed to Mr. Coon during an investigation into Ms. Hunt's death. Motions to dismiss SVMC and Attorney McClintock as Defendants were granted by a prior Opinion and Order and familiarity with that Opinion and Order is presumed.  (*See* Doc. 72.)

The remaining claims in this matter are against Shea only.  They are: (1) common-law conversion by repossession of a grave stone installed by Shea; (2) intentional

infliction of emotional distress for grave desecration and the removal of the grave stone; and (3) breach of contract for overcharging for professional funeral services.  Mr. Coon has filed a Motion for Summary Judgment, asserting that "no single issue is in dispute" and that he is entitled to money damages in the amount of $2.5 million as a matter of law. (*See* Doc. 105-1 at 20–21.)  Shea opposes the Motion, arguing that it has been prejudiced by Mr. Coon's failure to comply with his discovery obligations, and that Mr. Coon cannot meet his burden of proof for each claim.  (*See* Doc. 119 at 1.)  Mr. Coon filed a Reply on June 4, 2014 (Doc. 127), and a "Final Respon[s]e" on June 5, 2014 (Doc. 128).

All parties have consented to direct assignment to the undersigned Magistrate Judge.  (Docs. 4, 10, 11, 48.)  For the reasons that follow, Mr. Coon's Motion for Summary Judgment (Doc. 105) is DENIED.  Mr. Coon's "Motion to Reassess" (Doc. 116) addresses one of the issues raised in the Summary Judgment Motion and is DENIED as moot.

## Background

The following facts are material to Mr. Coon's claims against Shea, and are undisputed except where noted.[1]  In 2009, Mr. Coon and his mother Joan M. Hunt went to Ackley's Funeral Home in Cambridge, New York and made arrangements for their own cremations and burials.  (Doc. 105-22 at 1.)  It is undisputed that, on or about

---

[1] Ascertaining the material facts is complicated in this case because Mr. Coon's "Statement of Material Facts" (Doc. 105-1) contains numerous arguments and legal conclusions interspersed with assertions of fact, lacks citations to the record for some factual assertions, and in other cases the evidence cited does not support the assertion.  Accordingly, Shea's Response to Mr. Coon's Statement of Material Facts (Doc. 119-1) disputes each paragraph in Mr. Coon's Statement on those (and other) grounds.  The Court has assembled the following statement with reference to the materials cited by both parties, including Mr. Coon's "Statement of Material Facts," at least some of which appears to be sworn before a notary (*see* Doc. 105-1 at 10).

January 30, 2010, Ms. Hunt died while she was a patient at SVMC. Mr. Coon claims that his half-sister Joanne Becker murdered Ms. Hunt at the hospital. After Ms. Hunt's death, Mark Shea received a call from SVMC, and subsequently transported the body from the hospital to Shea's funeral home. (Doc. 119-5 at 1, ¶¶ 3–4.) Mr. Coon claims that Ms. Becker hired Shea to cremate Ms. Hunt's remains before any autopsy could be performed.

Ms. Becker completed forms to arrange for funerary services with Shea. (Doc. 119-6 at 1, ¶ 2.) She completed a "Cremation and Disposition Authorization" in which she identified herself as Ms. Hunt's daughter. (Doc. 119-5 at 1, ¶ 6.) Also in that document, Ms. Becker certified that she did not have "actual knowledge of any living person who has a superior right to act as the Authorizing Agent." (Doc. 58-5 at 1.) According to Mark Shea, "Ms. Becker was listed as the hospital contact person for the decedent, was the beneficiary of her life insurance policy, and it was my understanding that she lived with the decedent as well." (Doc. 119-5 at 1, ¶ 7.) Mr. Coon insists that Ms. Becker had no "legal right to start or mainta[i]n any contract" on behalf of Ms. Hunt or her estate. (*E.g.*, Doc. 127-3 at 3; *see also* Doc. 17 at 3 ("Joanne M Becker had and has no right to speak for our family then or now.").) Mark Shea asserts that, at the time he carried out Ms. Becker's instructions, he was "not aware that Mr. Coon existed," or that there was any "request that the hospital perform an autopsy for the decedent." (Doc. 119-5 at 1, ¶ 5.)

Shea arranged for a cremation, a granite monument, and for a graveside service, among other things. (*See* Doc. 105-2 at 2.) Specifically, Shea billed for the following items and services:

| | |
|---|---:|
| Basic Services of Director & Staff | $1850.00 |
| Graveside Service | 325.00 |
| Transfer of Remains | 360.00 |
| Service/Utility Vehicle | 100.00 |
| Casket-Pine | 260.00 |
| Urn-Arlington | 425.00 |
| Medical Examiner Fees | 25.00 |
| Crematory Charges | 300.00 |
| Clergy Honorarium | 100.00 |
| Paid Death Notices-Troy Record and Bennington Banner | 477.28 |
| Paid Death Notices-Rutland [H]erald | 15.00 |
| Death Certificates | 50.00 |
| Burial Permit Fees | 5.00 |
| Grey Granite Monument | 495.28 |
| Grave Opening & Closing | 350.00 |
| Sales Tax | 29.72 |

(*Id.*) The total charges for all of Shea's services came to $5,167.28. (*Id.*)

Ms. Becker assigned the $5,000 in proceeds from Ms. Hunt's life insurance policy towards that bill, leaving $167.28 due. (*See* Doc. 105-1 at 2; Doc. 119-5 at 2, ¶ 8; Doc. 119-6 at 1, ¶ 4.) According to Shea, the unpaid balance of $167.28 was attributable to the grave marker. (Doc. 119-5 at 2, ¶ 9; Doc. 119-6 at 1, ¶ 4.) Mark Shea believed that, because the grave marker had not been paid for in full, he still owned it. (Doc. 119-5 at 2, ¶ 9.) He says that he nevertheless permitted it to remain on Ms. Hunt's grave during the service "as a gesture of good faith." (*Id.*)

It is undisputed that Mr. Coon gave Shea a check dated April 5, 2010 in the amount of $167 to cover the unpaid balance. (*See* Doc. 105-3 at 1; Doc. 119-5 at 2,

4

¶ 10.)  On April 14, 2010, Shea's bank informed Shea that the check was written on a closed account, and charged Shea additional fees.  (*See* Doc. 105-3 at 1; Doc. 105-18; Doc. 119-5 at 2, ¶ 12.)  As a result of the bank fees, Shea increased the unpaid balance to $192.  (Doc. 119-5 at 2, ¶¶ 13–14; Doc. 119-6 at 1, ¶ 4.)

Mr. Coon claims that on April 23, 2010 he sent Shea a $100 postal money order, and that on May 2, 2010 he sent a $98 money order to cover the unpaid balance.  (Doc. 105-1 at 2, 20.)  Mr. Coon also claims that Ms. Hunt's estate paid an additional $95 toward the outstanding balance.  (*Id.* at 2–3.)  Shea disputes that Mr. Coon ever sent Shea money orders, asserting that he has no records of receiving them.  (*See* Doc. 119-6 at 2, ¶ 8.)  Mark Shea states that on November 2, 2010, he told Ms. Becker that if she did not pay the remaining balance by December 1, 2010, Shea would remove the unpaid-for grave marker.  (Doc. 119-5 at 2, ¶ 15; Doc. 119-6 at 1, ¶ 5.)

According to Shea, the balance remained unpaid on December 1, 2010, and within a "reasonable time" after that date, Mark Shea removed the grave marker from the Buskirk, New York cemetery.  (Doc. 119-6 at 2, ¶ 6.)  Mark Shea asserts that he hand-carried the marker from the grave site to his vehicle, and that he did not disturb any of the adjoining graves or remove or damage any items on any of the adjoining graves.  (*Id.* at 2, ¶ 7.)

In contrast, Mr. Coon asserts that Shea came to the cemetery on May 7, 2012 (shortly before Memorial Day) (*see* Doc. 17 at 5; Doc. 105-1 at 13), and that while there, Shea removed Ms. Hunt's marker, disturbed the grass and earth, left tire tracks, and damaged other monuments as well as irreplaceable photos and a flag holder.  (*See* Doc.

5

105-1 at 7–8, 17–18.)  According to Mr. Coon, Shea's desecration caused him emotional distress and lost sleep, lost weight, and severe gastric illness, among other ill effects. (*See* Doc. 105-1 at 9.)[2]

It is undisputed that on or about May 12, 2011, Mr. Coon's uncle, Walter Harwood, paid Shea $102.32 towards the allegedly outstanding monument fees.  (*See* Doc. 105-7 at 2; Doc. 105-9 at 1; Doc. 119-6 at 2, ¶ 9.)  Shea asserts that it wrote off the remaining $92 as a loss.  (*See* Doc. 119-5 at 3, ¶ 17; Doc. 119-6 at 2, ¶ 9.)  It is undisputed that Shea returned the headstone to Ms. Hunt's grave, although it is unclear precisely when that occurred.  (*See* Doc. 105-7 at 2 ("The headstone was returned to Joan[']s resting place that week [apparently in May 2012]."); *see also* Doc. 119-6 at 2, ¶ 10 ("I placed the grave marker on the grave site within a week of receiving partial payment on Ms. Becker's delinquent account, which would have been in mid-May of 2011.").)

## Analysis

### I. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, the discovery and the disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In deciding whether there is a genuine issue of

---

[2] The allegations in this paragraph appear in Mr. Coon's Statement of Material Facts (Doc. 105-1).  In support of his claims regarding his emotional distress, Mr. Coon has attached what appear to be copies of numerous documents pertaining to his medical health.  (*See* Doc. 105-19.)  Whether there is admissible evidence in support of causation and the alleged damages is discussed below.

6

material fact, the Court must "interpret all ambiguities and draw all factual inferences in favor of the nonmoving party." *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006). The burden of demonstrating the absence of a genuine issue of material fact rests upon the party seeking summary judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once a properly supported motion for summary judgment has been made, the burden shifts to the nonmoving party to set out specific facts showing a genuine issue for trial. *See* Fed. R. Civ. P. 56(2). The rules require that a nonmoving party set forth specific facts in the affidavits, depositions, answers to interrogatories, or admissions, showing that a genuine issue exists for trial. *Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996) (citing *Celotex*, 477 U.S. at 324).

**II.     Discovery and Rule 56(d)**

Shea argues that Mr. Coon has failed to comply with his discovery obligations, and that Shea has been prejudiced by that failure. In support of its position, Shea has supplied an affidavit pursuant to Fed. R. Civ. P. 56(d). (Doc. 119-2.) The Second Circuit has explained that when a party facing a motion for summary judgment "reasonably advises the court that it needs discovery to be able to present facts needed to defend the motion, the court should defer decision of the motion until the party has had the opportunity to take discovery and rebut the motion." *Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 386 (2d Cir. 2001). Here, as described below, the Court concludes that Mr. Coon's Motion for Summary Judgment should be denied. Accordingly, Shea's Rule 56(d) argument is moot. *See Yedigaryan v. Penske Truck Leasing Corp.*, No. 1:09-cv-1009 (GLS/GHL), 2012 WL 430618, at *3 n.5

(N.D.N.Y. Feb. 10, 2012) (denying as moot Rule 56(d) motion made by party opposing summary judgment because the court denied the summary judgment motion).[3]

### III. Grave-Desecration / Emotional-Distress Claim

The Court begins with Mr. Coon's grave-desecration claim. This claim, as the Court previously concluded, is governed by New York law. (*See* Doc. 72 at 35.) Shea asserts that Mr. Coon's grave-desecration claim is not actionable because it is akin to a claim for wrongful disinterment of a body, which is not recognized in New York. *See Orlin v. Torf*, 513 N.Y.S.2d 870, 872 (N.Y. App. Div. 1987) ("In light of the existence of Not-For-Profit Corporation Law § 1510(e) and the fact that [the] Supreme Court is without jurisdiction to order a disinterment in the absence of specific statutory authority, it is apparent that this claimed common-law cause of action does not exist at this time in this State." (citation omitted)). Mr. Coon's claim is not, however, a wrongful-disinterment claim—he does not claim that Shea removed any human remains from the grave. Rather, Mr. Coon alleges that Shea desecrated the grave by damaging the surface and objects placed there, and by removing the grave stone. New York recognizes a cause of action for desecration of a grave. *See Gostkowski v. Roman Catholic Church of the Sacred Hearts of Jesus & Mary*, 186 N.E. 798, 800 (N.Y. 1933).

Shea asserts that Mr. Coon has failed to cite any admissible evidence that Shea did anything other than remove the grave marker. (*See* Doc. 119-1 at 4.) The Court need not reach that issue because, apart from any questions about the admissibility of Mr. Coon's evidence, Shea has presented admissible evidence that puts Mr. Coon's assertions in

---

[3] Of course, Mr. Coon's discovery obligations are not made moot by this conclusion.

dispute, thereby precluding summary judgment in Mr. Coon's favor with respect to the alleged damage to the graves (other than the removal of the grave marker).  In his affidavit, Mark Shea asserts that he hand-carried the marker when he removed it and when he returned it, and that he did not disturb any of the adjoining graves or remove or damage any items on any of the adjoining graves.  (Doc. 119-6 at 2–3, ¶¶ 7, 10.)  Summary judgment in favor of Mr. Coon with respect to the alleged damages to the graves (other than the removal of the grave marker) is therefore clearly not appropriate.

Mr. Coon alleges that Shea's removal of the grave marker itself caused him emotional distress.  (*See* Doc. 105 at 4.)  Under New York law:

> [T]he heirs of a decedent, at whose grave a monument has been erected, or the person who rightfully erected it, can recover damages from one who wrongfully injures or removes it, or by an injunction may restrain one who without right threatens to injure or remove it, and this, though the title to the ground wherein the grave is be not in the plaintiff, but in another.

*Mitchell v. Thorne*, 32 N.E. 10 (N.Y. 1892).  Here, it is undisputed that Shea removed the grave marker.  Shea's position is that removal was not wrongful because, after repeated requests for payment, the marker had still not been paid for in full.

As noted above and discussed more fully below, Mr. Coon asserts that payment was made in full before Shea removed the grave marker.  However, even assuming that payment was not made, Shea has cited no authority authorizing self-help repossession.  New York law provides that:

> A person furnishing or placing in a cemetery or burial ground, a monument, gravestone, inclosure or other structure, has a lien thereon for the agreed price thereof or the part remaining unpaid, with interest from the time the amount was due, upon filing with the superintendent or person in charge of such cemetery or burial ground, a notice of lien as provided in this article.

N.Y. Lien Law § 120.  Here, there are no facts as to whether Shea filed the requisite notice to obtain a lien.  More importantly, however, New York law does not authorize self-help to enforce such a lien.  Rather, the lienor must bring an action and obtain a judgment, and, after doing so, must follow specific statutory procedures regarding notice and sale.  *See id.* § 122.

The Court nevertheless concludes that summary judgment in favor of Mr. Coon on this issue is not appropriate.  The factual record is insufficient to determine as a matter of law that Shea's removal of the grave marker caused the emotional distress that Mr. Coon claims.  Mr. Coon has supplied numerous pages of medical documentation (Doc. 105-19), but he has introduced no evidence that the medical issues recounted in that documentation were caused by Shea's removal of the grave marker.

## IV.     Conversion of the Grave Marker

As the Court previously noted, New York law applies to Mr. Coon's conversion claim.  (*See* Doc. 72 at 37.)  In New York, "[a] conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession."  *Colavito v. N.Y. Organ Donor Network, Inc.*, 860 N.E.2d 713, 717 (N.Y. 2006).  "Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights."  *Pappas v. Tzolis*, 982 N.E.2d 576, 580 (N.Y. 2012) (quoting *Colavito*, 860 N.E.2d at 717).  Shea argues that Mr. Coon's conversion claim fails "because (a)

Plaintiff did not have legal ownership or superior possession of the grave marker, (b) Shea did not engage in unauthorized dominion over the grave marker to the alteration of the marker or exclusion of Plaintiff's rights, and (c) Plaintiff's claim sounds in contract, not tort." (Doc. 119 at 5–6.) The Court discusses each of Shea's arguments in turn.

In New York, "[c]onversion is concerned with possession, not with title." *State v. Seventh Regiment Fund, Inc.*, 774 N.E.2d 702, 711 (N.Y. 2002) (internal quotation marks and citation omitted). Thus, it is irrelevant whether the grave marker was fully paid for. Once the marker was erected, Mr. Coon obtained a right to recover for injury to or removal of the marker under *Mitchell*. The Court concludes that that is a sufficient interest for a conversion claim.

Shea asserts that, because he gave Ms. Becker notice that he would remove the marker if it was not paid for by December 1, 2010, and because payment was not made by that date, Ms. Becker had tacitly authorized removal of the marker. That argument, however, ignores the requirements of New York lien law as discussed above. To remove the marker, Shea would have had to comply with N.Y. Lien Law §§ 120–124. Shea's argument, if adopted, would dispense with the protections afforded by New York law.

Finally, Shea argues that Mr. Coon's conversion claim is really an attempt to repudiate a contract between Ms. Becker and Shea. In support, Shea cites cases for the proposition that in New York "a breach[-]of[-]contract claim may not be recast as a conversion claim." *Wells Fargo Bank, N.A. v. Nat'l Gasoline, Inc.*, No. 10-CV-1762

11

(RER), 2013 WL 696651, at *5 (E.D.N.Y. Feb. 26, 2013).[4]  It is true that Mr. Coon seeks to repudiate the contract with Shea.  *See infra.*  But that is different than a claim for breach of contract.  Moreover, the contract claim that Mr. Coon is bringing—for overcharging or mischarging for services—is distinct from Mr. Coon's conversion claim.[5]

If it were to be assumed that Mr. Coon can prove liability for conversion, the question becomes one of damages.  In New York, "[t]he usual measure of damages for conversion is the value of the property at the time and place of conversion, plus interest." *Fantis Foods, Inc. v. Standard Importing Co.*, 402 N.E.2d 122, 125 (N.Y. 1980).  Here, it is undisputed that the stone was returned; that fact therefore works to mitigate any damages.  Ordinarily, a nominal damage award might be appropriate.  However, since Mr. Coon is alleging emotional distress arising from the removal of the grave marker, and since the factual predicate for that claim is identical to Mr. Coon's conversion claim, the Court concludes that the best course of action is to deny summary judgment on the conversion claim and resolve together all damages questions on all claims stemming from the removal of the stone.

---

[4] Shea's argument is perhaps a species of argument based on New York's economic loss rule, which "bars recovery in negligence for economic damage absent personal injury or property damage." *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 750 N.E.2d 1097, 1101 (N.Y. 2001).

[5] Mr. Coon is apparently simultaneously claiming that there was no contract, and that the contract was breached.

## V. Contract Claims (Overcharging or Mischarging for Shea's Services)

Mr. Coon's final claim is that Shea overcharged or mischarged for the funeral services that it provided. The Court applies Vermont law to Mr. Coon's contract claims. (*See* Doc. 72 at 29.)

First, Mr. Coon claims that Shea failed to credit the account with payments he says he made by money order on April 23, 2010 ($100) and May 2, 2010 ($98), and with a $95 payment allegedly made by Ms. Hunt's estate. On this claim, there is a dispute of fact that precludes summary judgment. Mr. Coon says that he (or Ms. Hunt's estate) sent the payments. Shea maintains that it never received those payments. It is inappropriate in the present procedural context to resolve questions about whether those payments were in fact sent by Mr. Coon or received by Shea.

Second, Mr. Coon claims that Shea charged for some services or items that were not actually used at the funeral. (*See* Doc. 128-10 at 2.) However, Mr. Coon does not explain how he has personal knowledge as to that allegation. In fact, Mr. Coon alleges that he was not able to attend the funeral. (*See* Doc. 17 at 6, ¶ F.)

Third, Mr. Coon claims that the final Shea bill exceeded an original contract price of $3,325. In support, Mr. Coon has supplied a "Statement of Funeral Goods and Services Selected" dated January 30, 2010 and apparently signed by Ms. Becker. (Doc. 128-2.) The "summary of charges" in that document does in fact indicate a "balance due" of $3,325. (*Id.*) However, the document also states as follows: "I also understand that additional disbursements which are incurred but not included here will be listed on the final statement. Where fees have been estimated adjustments will be reflected on the

13

final statement." (*Id.*)  It is therefore clear that the document upon which Mr. Coon relies is not a contract for a fixed price of $3,325, and cannot support a contract claim that any charges over $3,325 constituted a breach.

Mr. Coon also claims that Shea's prices exceeded the prices at other funeral homes.  In support, Mr. Coon has supplied documents purporting to show that funeral services at the New Comer-Cannon Funeral Home, Ackley's Funeral Home, and the Scott & Barbieri Family Funeral Home would have been on the order of $3,000.  (*See* Doc. 105-15.)  Shea attacks Mr. Coon's documentation as being inadmissible and "of unknown provenance and authenticity."  (Doc. 119 at 6.)  The Court has reviewed Mr. Coon's documentation and agrees that there are serious issues with its admissibility.  Even putting that problem aside, Mr. Coon's documentation does not prove that the quoted prices encompass the same services that Shea provided.  And, as Shea points out, there is no legal obligation for a business to be the cheapest provider of services.

Mr. Coon asserts that he is entitled to a refund of all amounts paid to Shea because Ms. Hunt's prior arrangement with Ackely's renders void any contract with Shea, and because Ms. Becker lacked authority.  (*See* Doc. 105 at 4; Doc. 127 at 1, 17, 21.)[6]  Mr. Coon has cited no authority for the proposition that a contract voids all subsequent contracts relating to the same subject matter.  If that were true, business would grind to a

---

[6] Mr. Coon raised this issue in a separate "Request for Clarification of Question Repeatedly Asked and Never Answered."  (Doc. 109.)  The Court denied that request, ruling that, to the extent Mr. Coon sought to have Shea's contract with the estate declared void, that question "relates to the ultimate merits of Coon's breach of contract claim and is not properly resolved in the context of a vague and conclusory 'motion for clarification.'"  (Doc. 112 at 5.)  Mr. Coon subsequently filed what appears to be a motion to reconsider.  (*See* Doc. 116.)  The Court DENIES the reconsideration motion as moot, given that the Court is addressing the issue presented in the summary judgment context.

halt because contracting parties could never be sure that there was not some prior contract in place that voided the contract under consideration. *See* Restatement (Second) of Contracts § 180 illus. 1 ("A and B make an agreement under which B promises to deliver to A goods. B already has a contract to deliver the goods to C, but A neither knows nor has reason to know this. On learning of B's contract with C, A refuses to take the goods or pay the price. Enforcement of B's promise to deliver the goods to A is not precluded on grounds of public policy and A has a claim against B for damages.").

The Court rejects Mr. Coon's assertion that the contract with Shea is void because Ms. Becker misrepresented her authority. In Vermont, "a party induced into a contract by fraud or misrepresentation can rescind the contract and avoid liability for any breach thereon." *Sarvis v. Vt. State Colleges*, 172 Vt. 76, 81, 772 A.2d 494, 498 (2001). That is the rule articulated in the Restatement (Second) of Contracts § 164(1): "If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient." Notably, the contract in such circumstances is only *voidable*; it is not void *ab initio*. *See* Restatement (Second) of Contracts § 7; *see also id.* § 163 cmt. c.[7] Moreover, "[u]sually the power to avoid is confined to one party to the contract." *Id.* § 7 cmt. b.

---

[7] A contract may be void from the start—i.e., never formed in the first place—when there has been a misrepresentation "as to the character or essential terms of a proposed contract." *Id.* § 163. Here, Mr. Coon is not claiming that Ms. Becker misrepresented the character or terms of the contract; he is alleging that she made a misrepresentation (concerning her authority) that induced Shea to enter into the contract.

Here, assuming that Ms. Becker misrepresented her authority to make decisions about Ms. Hunt's remains and funeral, the effect would have been to vest *Shea* with a power of avoidance. Mr. Coon cannot exercise that power. Moreover, even if Ms. Becker was not actually authorized to make the decisions that she did, that does not mean that there was no contract. Giving Shea the benefit of all reasonable facts and inferences, Ms. Becker could be said to have had apparent authority to enter into the contract with Shea on behalf of Ms. Hunt's estate. *See New England Educ. Training Serv., Inc. v. Silver St. P'Ship*, 148 Vt. 99, 105, 528 A.2d 1117, 1120 (1987) (under doctrine of apparent authority, agent binds principal when third party reasonably relies on representations that agent acting within scope of authority).

Finally, Mr. Coon asserts that the contract is void because it was entered into for illegal purposes: to facilitate thefts by Ms. Becker, and to obstruct justice, namely by preventing an autopsy and destroying any evidence that such a procedure might have produced regarding the cause of Ms. Hunt's death. (*See* Doc. 128 at 1.) It is true that, in Vermont, "[a] contract whose formation or performance is illegal may be held void and unenforceable." *My Sister's Place v. City of Burlington*, 139 Vt. 602, 613, 433 A.2d 275, 282 (1981). Vermont courts weigh a variety of factors in order to determine whether a promise should not be enforced on public-policy grounds, including the directness of the connection between the misconduct at the contract term. *See Lang McLaughry Spera Real Estate, LLC v. Hinsdale*, 2011 VT 29, ¶ 26, 35 A.3d 100, 109 (citing Restatement (Second) of Contracts § 178). Here, none of the contract terms were themselves illegal— they involved cremation and funeral services for the decedent. Mr. Coon has offered

only speculation that Shea knew that the services contracted for were designed to facilitate theft or obstruct justice. That is insufficient to support summary judgment on Mr. Coon's claim that the contract was void or unenforceable on public-policy grounds.

## **Conclusion**

For the reasons stated above, Mr. Coon's Motion for Summary Judgment (Doc. 105) is DENIED, and his "Motion to Reassess" (Doc. 116) is DENIED as moot.

Dated at Burlington, in the District of Vermont, this 16th day of July, 2014.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge