UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Donald J. Coon,

      Plaintiff,

      v.                                    Civil Action No. 2:13-cv-182

Southwestern Vermont Medical Center,
Shea Family Funeral Homes,
Lon McClintock, Esq.,

      Defendants.

## **OPINION AND ORDER**
### (Docs. 144, 147)

On June 25, 2013, Plaintiff Donald J. Coon, proceeding *pro se*, commenced this action against several Defendants, including Defendant Shea Family Funeral Homes ("Shea").  Mr. Coon's claims stem from the death of his mother, Joan Marie Hunt, while Ms. Hunt was a patient at the Southwestern Vermont Medical Center ("SVMC"); from Shea's actions following Ms. Hunt's death; and from Attorney Lon McClintock's alleged breach of duties he owed to Mr. Coon during an investigation into Ms. Hunt's death. Motions to dismiss SVMC and Attorney McClintock as Defendants were granted by a prior Opinion and Order (*see* Doc. 72).  Familiarity with that Opinion and Order is presumed.

The remaining claims in this matter are against Shea only.  They are: (1) common-law conversion by repossession of a grave stone installed by Shea; (2) intentional infliction of emotional distress for grave desecration and the removal of the grave stone; and (3) breach of contract for overcharging for professional funeral services.  Several motions are currently pending.  The Court here addresses two motions related to the so-called "Surrogate Letter" (Doc. 144-1): Mr. Coon's Motion for Rule 11 Sanctions (Doc. 144) and Mr. Coon's Motion to Strike (Doc. 147).

All parties have consented to direct assignment to the undersigned Magistrate Judge.  (Docs. 4, 10, 11, 48.)  For the reasons that follow, Mr. Coon's Motion for Rule 11 Sanctions (Doc. 144) is DENIED and his Motion to Strike (Doc. 147) is DENIED.

## **Background**

Mr. Coon claims that in January 2010, his half-sister Joanne Becker murdered Ms. Hunt at SVMC.  Mr. Coon also claims that after Ms. Hunt died, Ms. Becker hired Shea to cremate the remains before any autopsy could be performed.  Shea performed services related to Ms. Hunt's burial and funeral, including the provision of a grave marker.  Some time prior to April 2010, there was an unpaid balance of about $167 on the account.  Mr. Coon gave Shea a check dated April 5, 2010 in the amount of $167 to cover the unpaid balance.  Assuming that the check would be honored, Mark Shea signed a waiver of citation and consent to appointment of administrator for Mr. Coon.  (Doc. 119-5, Shea Aff. ¶¶ 10–11.)

On April 14, 2010, Shea's bank informed Shea that the check was written on a closed account, and charged Shea additional fees.  Shea accordingly increased the

balance due to $192.  Mr. Coon insists that he did not "scam" Shea or commit fraud or false pretenses.  (Doc. 105-22 at 2.)  According to Mr. Coon, he was in the process of getting new bank accounts together with his wife Riza Coon, which apparently was the reason why the April 5, 2010 check did not clear.  (*See* Doc. 128 at 3.)

At some point after April 14, 2010, Mark Shea wrote a letter directed to Surrogate's Court in Washington County, New York (the "Surrogate Letter").  The letter states as follows:

RE: JOAN MARIE HUNT

Dear Sirs-

I was asked to sign the enclosed by the son of Mrs. Hunt (Donald Coon), at the time he had given us a check for the remaining balance of her account.  Since then the check has not cleared and we have incurred charges, therefore the estate of Mrs. Hunt owes our funeral home $192.00.

I feel that he had me sign the document under false pretenses as he knew the check would not clear.

We are submitting this as a claim against the estate of Mrs. Hunt.

Please be in touch with any further instruction or questions.

Sincerely,

Mark F. Shea, President

(Doc. 144-1 at 2.)[1]

The parties dispute whether Mr. Coon subsequently paid the outstanding balance. However, it is undisputed that Shea did not credit the estate's account with any additional

---

[1]  The letter was addressed to the Surrogate's Court at 386 Broadway, Fort Edward, New York. (*Id.*)  It was apparently never received by the Surrogate's Court, which is located at 383 (not 386) Broadway in Fort Edward.  (*See id.* at 1.)

payments until May 2011, when Mr. Coon's uncle made a payment to Shea.  Mr. Coon claims that, during the time that the balance was unpaid, Shea desecrated Ms. Hunt's grave and removed the grave marker.  Mr. Coon says that he suffered emotional distress as a result of the alleged desecration and the removal of the grave marker, and seeks damages on the order of several million dollars.

In an affidavit dated October 30, 2013, Mark Shea referred to the Surrogate Letter that he had written.  (Doc. 119-5, Shea Aff. ¶ 13.)[2]  Mark Shea also referred to Mr. Coon's "bad check" in an affidavit dated May 22, 2014.  (Doc. 119-6, Shea Aff. ¶ 8.)

## Procedural History

Shea sent Mr. Coon Initial Disclosures on March 13, 2014.  (Doc. 95.)  On May 19, 2014, Shea sent Mr. Coon Supplemental Initial Disclosures.  (Doc. 118.)  Shea's Initial Disclosures or Supplemental Initial Disclosures apparently included a copy of the Surrogate Letter.  On May 22, 2014, Shea filed an Opposition (Doc. 119) to Mr. Coon's then-pending Motion for Judgment as a Matter of Law (Doc. 105).[3]  In support of its Opposition, Shea included the October 30, 2013 and May 22, 2014 affidavits signed by Mark Shea.  (Docs. 119-5, 119-6, respectively.)

Mr. Coon filed his Motion for Rule 11 Sanctions on June 25, 2014.  (Doc. 144.) He filed his Motion to Strike on June 30, 2014.  (Doc. 147.)  Mr. Coon has also filed a separate suit in this Court against Shea, alleging that the Surrogate Letter constitutes

_____

[2]  Mark Shea's October 30, 2013 affidavit also appears in the record as Document 58-2.

[3]  The Court denied Mr. Coon's Motion for Judgment as a Matter of Law on July 16, 2014.  (Doc. 164.)

4

defamation, obstruction of justice, interference with contract, and fraud.  *Coon v. Shea*, No. 2:14-cv-85.

## Analysis

Mr. Coon seeks sanctions against Shea under Fed. R. Civ. P. 11 and to strike all of Shea's filings in this Court that refer to the Surrogate Letter.  (*See* Docs. 144, 147.)  Mr. Coon alleges that the Surrogate Letter is "false, fake, phoney," and defamatory.  (Doc. 144 at 3–4.)  He asserts that counsel for Shea, Attorney Ryan Gardner, "seems to be the direct architect to this."  (*Id.*; *see also* Doc. 147 at 1 ("[I] do believe this was [a] well thought out plan by an att[orne]y who has been anything but nice or shown pltf any decency.").)  Mr. Coon asserts that Attorney Gardner should be disbarred and that the Court should strike all documents "tainted" by the Surrogate Letter and grant summary judgment to Mr. Coon on all grounds.  (Doc. 147 at 4.)

Shea contends that the Surrogate Letter is not false, fake, or phony, noting that Mark Shea testified in his October 30, 2013 affidavit that he authored the letter and sent it to the Surrogate's Court.  (Doc. 157 at 1; Doc. 162 at 1.)  According to Shea, filing the Surrogate Letter is not grounds for sanctions because "there is nothing improper, false, misrepresenting, or fraudulent about the Surrogate Letter."  (Doc. 157 at 2; Doc. 162 at 2.)  As to Mr. Coon's assertion that the Surrogate Letter is defamatory, Shea argues that Mr. Coon's defamation claim is not actionable, and that even if it were, it is irrelevant to a Rule 11 motion.  (Doc. 157 at 2.)  Shea maintains that in fact Mr. Coon's Motion for Sanctions is frivolous and sanctionable, and seeks financial and other sanctions against

Mr. Coon.  (*Id.* at 4.)  Regarding Mr. Coon's Motion to Strike, Shea argues that there is no authority for "striking" discovery documents from the record.  (Doc. 162 at 1.)

There is no basis for "striking" the Surrogate Letter from the record in this case. The closest applicable procedural rule is Fed. R. Civ. P. 12(f), which authorizes the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  The Surrogate Letter is not, however, part of any pleading; it is a document that was provided in discovery.  *See* Fed. R. Civ. P. 7(a) (listing pleadings).  Mr. Coon's Motion to Strike (Doc. 147) is baseless.  *See Morris v. Rabsatt*, No. 9:10-CV-0041 (MAD/GHL), 2012 WL 976035, at *8 (N.D.N.Y. Jan. 31, 2012) ("[T]he documents given to Plaintiff were provided as part of the discovery process, and are not part of a pleading. . . . Therefore, Plaintiff's motion to strike is denied.").

Under Fed. R. Civ. P. 11, an attorney who submits materials to a court certifies that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).  Rule 11(c) authorizes sanctions for violations of Rule 11(b)'s requirements.

Here, there is no basis for imposing Rule 11 sanctions against Shea for providing the Surrogate Letter in discovery.  Rule 11 specifically "does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37."  Fed. R. Civ. P. 11(d).  To the extent that Shea filed the Surrogate Letter with the Court or otherwise referred to it in any other filings, there is no reason to conclude that Rule 11(b) was violated.  It appears to have been presented to satisfy Shea's discovery obligations. The letter appears to be authentic, insofar as Mark Shea has testified that he authored it. To the extent that the Surrogate Letter is defamatory or gives rise to any other cause of action (issues that the Court does not decide here), it is difficult to see how merely providing it or filing it in this case could be sanctionable.  *See Kelly v. Albarino*, 485 F.3d 664, 665–66 (2d Cir. 2007) (per curiam) (discussing the absolute privilege that applies to statements made by participants in judicial proceedings).

Although the Court concludes that neither of Mr. Coon's Motions have merit, the Court denies Shea's request for financial sanctions against Mr. Coon for filing those Motions.  Given Mr. Coon's *in forma pauperis* status (*see* Doc. 2), he would be unable to pay a monetary sanction.  Alternatively, Shea seeks a sanction directing the Court to reject any future case filings by Mr. Coon unless he is either represented by counsel or obtains prior leave of court to proceed *pro se*.  (Doc. 157 at 4.)  The Court leaves that potential issue for resolution in the context of Shea's Motion to Enjoin Plaintiff from Filing Further Vexatious Litigation (Doc. 152).

7

## __Conclusion__

For the reasons stated above, the Court DENIES Mr. Coon's Motion for Rule 11

Sanctions (Doc. 144) and DENIES his Motion to Strike (Doc. 147).

Dated at Burlington, in the District of Vermont, this 7th day of August, 2014.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge