UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Donald J. Coon,

       Plaintiff,

       v.                                 Civil Action No. 2:13-cv-182

Southwestern Vermont Medical Center,
Shea Family Funeral Homes,
Lon McClintock, Esq.,

       Defendants.

## OPINION AND ORDER
(Doc. 154)

On June 25, 2013, Plaintiff Donald J. Coon, proceeding *pro se*, commenced this

action against several Defendants, including Defendant Shea Family Funeral Homes

("Shea").  The remaining claims in this matter are against Shea only.  They are: (1)

common-law conversion by repossession of a grave stone installed by Shea; (2)

intentional infliction of emotional distress for grave desecration and the removal of the

grave stone; and (3) breach of contract for overcharging for professional funeral services.

Mr. Coon sought summary judgment in his favor on those claims (Doc. 105), which the

Court denied in an Opinion and Order filed on July 16, 2014.  (Doc. 164.)[1]  Currently

pending is Shea's Motion to Dismiss as a Sanction for Plaintiff's Failure to Comply with

Discovery Order (Doc. 154).

---

[1] Familiarity with the July 16, 2014 Opinion and Order is presumed.

All parties have consented to direct assignment to the undersigned Magistrate Judge.  (Docs. 4, 10, 11, 48.)  The Court received the parties' additional briefing (Docs. 190, 197) in response to the Court's Order dated July 30, 2014 (Doc. 180).  The Court held a hearing on Shea's Motion to Dismiss on September 25, 2014; Mr. Coon did not appear for the hearing.  For the reasons that follow, the Court GRANTS Shea's Motion to Dismiss (Doc. 154).

## Background

It is unnecessary here to recount Mr. Coon's factual allegations in complete detail. In brief, Mr. Coon claims that in January 2010, his half-sister Joanne Becker murdered their mother, Joan Marie Hunt, at Southwestern Vermont Medical Center.  Mr. Coon also claims that after Ms. Hunt died, Ms. Becker hired Shea to cremate the remains before any autopsy could be performed.  In addition, Mr. Coon claims that Shea wrongly concluded that a balance was due for the services it provided (including provision of a grave marker), and that, after the balance went unpaid, Shea desecrated Ms. Hunt's grave and removed the grave marker.  Mr. Coon says that he suffered emotional distress as a result of the alleged desecration and the removal of the grave marker, and seeks damages on the order of several million dollars.

## Procedural History

On March 7, 2014, Shea filed its Answer (Doc. 89) to Mr. Coon's Amended Complaint (Doc. 17).  On March 13, 2014, Shea mailed to Mr. Coon copies of a number of documents, including Shea's First Set of Interrogatories and Requests to Produce. (Doc. 95.)  On April 1, 2014, the Court entered a Discovery Schedule/Order.  (Doc. 102.)

2

That Order set an April 15, 2014 deadline for Mr. Coon's initial disclosures.  The Order also included, among other things, the following additional deadlines: (1) interrogatories and requests for production by September 30, 2014; (2) depositions of all non-experts by August 15, 2014; (3) Mr. Coon's expert witness reports by April 20, 2014 and depositions of Mr. Coon's expert witnesses by May 20, 2014; (4) Shea's expert witness reports by June 20, 2014, and expert depositions by July 20, 2014; and (5) all discovery completed by November 7, 2014.  (*Id.* at 1.)

On April 18, 2014, Mr. Coon filed a "Motion for Judgment as a Mat[t]er of Law" along with affidavits and multiple exhibits.  (Doc. 105.)  One of the attachments to that filing is a 45-page collection of medical-related documents.  (Doc. 105-19.)  For example, there is a September 4, 2013 letter apparently from "W. Marvin Day, RPAC" describing Mr. Coon's "significant amount of medical issues [in] the last several years." (*Id.* at 1.)  There are also two pages of scanned business cards or appointment reminders at various health providers.  (*Id.* at 5–6.)  Mr. Coon identifies Marvin Day as his "old primary care" doctor, and "Chris Thomas MD" as his "newer primary."  (*Id.* at 44.)[2]

On April 30, 2014, Shea filed a Motion to Compel (Doc. 106), requesting an order compelling Mr. Coon to provide his initial disclosures and expert reports, and to respond

---

[2] As noted above, the Court denied Mr. Coon's summary judgment motion on July 16, 2014. (Doc. 164.)  With respect to the medical documents that Mr. Coon had filed, the Court concluded that he had "introduced no evidence that the medical issues recounted in that documentation were caused by Shea's removal of the grave marker."  (*Id.* at 10.)

to Shea's Interrogatories and Requests to Produce (Doc. 106-1).[3]  In an Order dated May 12, 2014 (the "Discovery Order"), the Court granted Shea's Motion to Compel, requiring Mr. Coon to provide initial disclosures and a written response to Shea's Interrogatories and Requests to Produce on or before June 2, 2014.  (Doc. 112.)  The Court also concluded that "[n]o expert witness disclosure is required as Plaintiff has advised Defendants' counsel that he does not intend to present expert witness testimony at trial."  (*Id.* at 3.)  The Discovery Order also explicitly warned Mr. Coon of the potential consequences of failing to comply with discovery orders, including dismissal in cases of willfulness, bad faith, or reasonably serious fault.  (*Id.* at 4–5.)

On May 16, 2014, Mr. Coon filed a Motion seeking an extension of time to satisfy his discovery obligations.  (Doc. 117.)  In a text order dated June 4, 2014, the Court granted Mr. Coon's Motion for an extension, stating: "Plaintiff must fully comply with his discovery obligations as set forth in 112 [the Discovery Order] on or before 6/16/2014.  **Plaintiff is again reminded that a willful failure to fully comply with discovery obligations under the Federal Rules of Civil Procedure may result in sanctions, including dismissal of this matter.**"  (Doc. 126.)

In a document dated May 12, 2014, Mr. Coon provided Shea with a five-page response to Shea's interrogatories ("First Response").  (Doc. 154-2.)  On or about

---

[3]  Shea's Interrogatories and Requests to Produce are appended to Shea's Motion to Dismiss as an exhibit.  (Doc. 154-1.)  Generally, Shea has posed 16 interrogatories spanning the topics of "personal data," "medical condition and history," "claimed damages," "other claims and accidents," "your claims against Defendant Shea," and "witnesses and statements."  (Doc. 154-1 at 2–5.)  Shea has also made seven distinct requests to produce, including certain medical records.  (*Id.* at 5.)  The Court discusses the specifics of Shea's Interrogatories and Requests to Produce as necessary below.

May 29, 2014, Mr. Coon provided Shea with an eight-page document responding to Shea's interrogatories and requests to produce ("Second Response"). (Doc. 154-3.) On June 20, 2014, Mr. Coon filed a Motion for Permission to File all Discovery Through the Court. (Doc. 140.) In that Motion, Mr. Coon asserted that he had provided Shea with numerous documents, but that Shea was "play[ing] games" and not supplying Mr. Coon with discovery, and was instead complaining that Mr. Coon was not "giving them the proper filings the way they need them." (*Id.* at 1–2.) On June 25, 2014, the Court denied Mr. Coon's June 20 Motion, stating: "The Court does not get involved in the discovery process except to the extent required by Fed. R. Civ. P. 37." (Doc. 142.)

Also on June 20, 2014, Shea filed a Motion to Extend the Discovery Schedule, asserting that Mr. Coon had failed to comply with the Court's discovery orders, and that due to Mr. Coon's non-compliance, Shea lacked sufficient information to depose Mr. Coon or to retain or disclose an expert witness by the June 20, 2014 deadline. (Doc. 137 at 1.) On July 17, 2014, the Court granted Shea's June 20 Motion, stating:

> Depositions of all non-expert witnesses shall be completed on or before 30 days after Plaintiff has fully complied with the disclosure requirements set forth in 112, 126, Orders of 5/12/2014 and 6/4/2014; Defendant's expert witness reports, if any, shall be disclosed on or before 60 days after Plaintiff has complied in full with 112, 126 Orders. Depositions of Defendant's experts must be completed 30 days thereafter.

(Doc. 168.)

Shea filed its 28-page Motion to Dismiss on July 7, 2014. (Doc. 154). The Motion discusses at length various deficiencies in Mr. Coon's discovery responses. Shea asserts that Mr. Coon has failed to supply initial disclosures. (*Id.* at 2.) Regarding Mr.

Coon's interrogatory responses, Shea asserts that "[t]he bulk of Plaintiff's First and Second Responses are incomplete, evasive, do not comply with the Discovery Order, and do not append copies of most of the requested documents." (*Id.*)  Regarding Mr. Coon's responses to Shea's requests to produce, Shea asserts that Mr. Coon's responses "simply do not provide the documents requested, or any documents." (*Id.* at 26.)

Mr. Coon filed an opposition to Shea's Motion to Dismiss on July 14, 2014.  (Doc. 166.)[4]  Shea filed a Reply on July 18, 2014, asserting that, since it filed its Motion to Dismiss listing deficiencies in Mr. Coon's discovery responses, Mr. Coon has made no efforts to supplement or otherwise provide further discovery.  (Doc. 170 at 1.)  Shea filed a Supplement on July 23, 2014, acknowledging that Mr. Coon had since sent Shea certain materials, but asserting that some of Mr. Coon's disclosures are still too late or noncompliant, and that he is still refusing to provide relevant documents.  (Doc. 174.)

On July 30, 2014, the Court ordered counsel for Shea to file an affidavit under L.R. 26(d)(1), and further ordered the parties to submit memorandums addressing the four factors governing dismissal of actions under Rule 37.  (Doc. 180.)  Mr. Coon filed a response on August 7, 2014.  (Doc. 190.)  Shea filed the requested affidavit (Doc. 198) and memorandum (Doc. 197) on August 14, 2014.

---

[4]  The Court ordered Mr. Coon's opposition sealed because it contains confidential mental health information.  (Doc. 167.)  Shea argues that Mr. Coon's discussion of those mental health issues is irrelevant to the discovery issues now before the Court.  (Doc. 170 at 3.)  The Court generally agrees, and focuses here on the portions of Mr. Coon's opposition that relate to the issues at hand.  To the extent that Mr. Coon might be arguing that mental and physical issues inhibit his ability to comply with his discovery obligations, the Court discusses that issue below.

Meanwhile, on August 4, 2014, Mr. Coon filed an "Update of Discovery" (Doc. 183), and a "Respon[s]e to [Defendants'] Discovery Complaint for 11th Time" (Doc. 184). On August 7, 2014, Mr. Coon filed a "Request for Judge to Reconsider Dismissal of Case as a Sanction." (Doc. 191.) Shea filed responses to those filings on August 14, 2014. (Docs. 193, 195, 196.) Mr. Coon filed a consolidated response to Shea's August 14, 2014 filings on August 20, 2014. (Doc. 199.)

As noted above, the Court held a hearing on Shea's Motion to Dismiss on September 25, 2014. The hearing was originally scheduled for September 5, 2014 (Doc. 192), but was rescheduled for September 25, 2014 in light of Mr. Coon's assertions regarding his health. (*See* Docs. 201–204.) The Court has not found any of those assertions sufficient to warrant a stay of this case or a delay in ruling on Shea's Motion to Dismiss. (*See* Docs. 210, 211.) Mr. Coon did not appear at the September 25 hearing.

## Analysis

Shea brings its Motion to Dismiss under Fed. R. Civ. P. 37(a), 37(d), and Local Rule 26(d). (Doc. 154 at 1.) Shea asserts that Mr. Coon's suit should be dismissed with prejudice for Mr. Coon's failure to comply with the Court's May 12, 2014 Order (Doc. 112), as modified by the Court's June 4, 2014 Order (Doc. 126). Since Shea is arguing that Mr. Coon has failed to comply with a court order, the Court treats the Motion as also being brought pursuant to Fed. R. Civ. P. 37(b)(2)(A)(v).

Under Fed. R. Civ. P. 37(b)(2)(A)(v): "If a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders," including "dismissing the action or proceeding in whole or in part." The

court has "wide discretion" when imposing sanctions under Rule 37.  *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 159 (2d Cir. 2012) (internal quotation marks omitted).  Dismissal is a severe sanction, "to be deployed only in rare situations," but at the same time, sanctions must be perceived as a credible deterrent to prevent a "pretrial quagmire" that might "engulf the entire litigative process." *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1064 (2d Cir. 1979).  "The severe sanction of dismissal with prejudice may be imposed even against a plaintiff who is proceeding *pro se*, so long as a warning has been given that noncompliance can result in dismissal."  *Valentine v. Museum of Modern Art*, 29 F.3d 47, 50 (2d Cir. 1994) (per curiam).

Dismissal pursuant to Rule 37 is governed by the following non-exclusive factors: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance."  *World Wide Polymers*, 694 F.3d at 159 (ellipsis in original) (internal quotation marks omitted).  The Court is mindful of the need to "disclose its deliberative path" and to assess each of the factors.  *See Baptiste v. Sommers*, No. 13-3079-cv, 2014 WL 4723272, at *3–4 (2d Cir. Sept. 24, 2014) (per curiam) (same requirement with respect to the factors relevant to a Rule 41(b) dismissal).

## I.     Mr. Coon's Noncompliance

The Court begins by reviewing the history of discovery in this case in somewhat greater detail.

### A.     Initial Disclosures

Shea made its initial disclosures to Mr. Coon in March 2014.  (Doc. 95.)  Mr. Coon has still not supplied Shea with his initial disclosures.

### B.     Shea's Interrogatories and Mr. Coon's Responses

As noted above, Shea has posed 16 interrogatories spanning the topics of "personal data," "medical condition and history," "claimed damages," "other claims and accidents," "your claims against Defendant Shea," and "witnesses and statements." (Doc. 154-1 at 2–5.)  Mr. Coon has responded to the "personal data" questions and Shea does not argue that those responses are deficient.  The questions in each of the other topic areas are the subject of dispute.  The Court highlights some of the disputes below as examples.

Interrogatory No. 2 asks Mr. Coon to "[l]ist and describe in detail each and every injury, illness or other physical, mental, emotional or nervous condition you claim to have suffered, or which you claim was aggravated, as a result of Defendant Shea's alleged conversion, overcharging, and/or grave desecration."  (Doc. 154-1 at 2.)  In his First Response, Mr. Coon states: "Objection to what th[is] is about.  This scope goes beyond what this case is about."  (Doc. 154-2 at 2.)  In his Second Response, Mr. Coon states: "Objection to anything related to auto-ped acc[ident] from 2000}, insomnia, upset stomach, blood pressure, crying."  (Doc. 154-3 at 2.)  Shea asserts that Mr. Coon's

responses are non-compliant because, according to Shea, they do not state whether the symptoms were initially caused by the "auto-ped" accident or whether they were caused by Shea's alleged wrongful conduct.  (Doc. 154 at 2.)  Shea states: "Perhaps Plaintiff is asserting a privilege in regard to a prior accident and then is stating that his alleged symptoms arise out of Shea's allegedly[]wrongful conduct, but this conclusion is not clear in the Responses."  (*Id.*)

Interrogatory No. 3 asks Mr. Coon to "[p]rovide a complete and accurate description of the medical history and course of your recovery from each condition listed in response to Interrogatory 2 above, including, but not limited to, identification of the approximate date of recovery for each injury from which you have recovered."  (Doc. 154-1 at 2.)  Mr. Coon's First Response was: "OBJECTION BEYOND SCOPE OF DEFTS ALLOWED QUESTIONING."  (Doc. 154-2 at 2.)  His Second Response was: "[I] saw psych lady she[] seemed off a bit so [I] set on po[]rch at night channel the issues involving mom[']s death, the way she was so beaten . . . ."  (Doc. 154-3 at 2.)  Shea notes that Mr. Coon "does not state the name of the medical providers that treated his alleged conditions; he does not provide the name of the 'psych lady;' he does not describe the medical history of or for these conditions; and he does not state when his treatment for each condition came to an end."  (Doc. 154 at 3.)

Interrogatory No. 7 concerns Mr. Coon's claim for emotional damages, and requests Mr. Coon to supply: "a. the nature or type or other appropriate description of the emotional damages; b. whether you received any medication for the emotional damages and, if so, identify the medication and the dosage thereof and the frequency of

application; and c. the duration of the emotional damages."  (Doc. 154-1 at 3.)  Mr.

Coon's First Response states "INTENTIONAL INFLICTION OF EMOTIONAL

DISTRESS" and goes on to discuss numerous other issues including the so-called

"Surrogate Letter" that spawned Mr. Coon's second lawsuit in this Court (No. 2:14-cv-

85) and Mr. Coon's mischarge/overcharge claim.  (Doc. 154-2 at 2–3.)  Mr. Coon's

Second Response states only: "[I] can[']t sleep [I] eat only [G]reek yo[]gurt 3oz stomach

[I] don[']t sleep etc."  (Doc. 154-3 at 2.)  Shea asserts: "Plaintiff does not properly

respond to this Interrogatory in that he does not state whether he takes any medications

for the conditions he alleges to have been caused by Shea, and he does not recite whether

his conditions are ongoing or whether he has reached a medical end result."  (Doc. 154 at

8.)

      Interrogatory No. 8 asks Mr. Coon to list every loss or expense that he is claiming

resulted from Shea's alleged wrongful acts.  (Doc. 154-1 at 3–4.)  Among other things,

Mr. Coon states in his First Response: "THE DAMAGES TO MY HEART AND SOUL

THE DESECRATION OF MY FAMILIES GRAVES MY MOMS RESTING

PLACE . . . ."  (Doc. 154-2 at 3.)  In his Second Response, Mr. Coon states: "[I] paid to

redo cemetery each time[] it[']s vandal[iz]ed.  [D]irt flowers bulbs etc."  (Doc. 154-3 at

2.)  Shea criticizes Mr. Coon's responses for listing losses caused by people other than

Shea; for failing to provide a careful itemization regarding his work on the cemetery; for

failing to provide a list of documents that relate to or substantiate the claim; and for

failing to adequately identify each person who has knowledge of the losses.  (Doc. 154 at

10.)

Interrogatory No. 10 asks Mr. Coon to identify medical professionals who have treated him for emotional damages relating to Shea's alleged wrongdoing.  (Doc. 154-1 at 4.)  Mr. Coon's First Response states: "WORK, TRIAL PREP TREATING PROVIDERS NOT EXPERTS WILL GIVE AT LATER DATE IF I USE ANYONE."  (Doc. 154-2 at 3.)  Mr. Coon's Second Response is: "[I] provided you with 2 pages of my drs [I] would sign for any you had provided me with a[n] authorization for.  [I] never received anything."  (Doc. 154-3 at 3.)  Shea says that the two pages that Mr. Coon has supplied, (*see* Doc. 105-19 at 5–6), do not provide the information requested.  (Doc. 154 at 12.)

In response to Shea's request in Interrogatory No. 11 that Mr. Coon describe any prior personal injury, disability, or emotional damages claims (Doc. 154-1 at 4), Mr. Coon states in his First Response: "I ASSERTED INABILITY TO SLEEP NAUSEA STOMACH SICKNESS ETC ETC LOSS OF WEIGHT ETC SINCE THE DAY MOM WAS FOUND BEATEN ROBBED AND LEFT FOR DEAD.  I DIDN'T SLEEP FOR FOUR MONTH[S], NOT A SINGLE NIGHT.  READ MED RECORDS U ALREADY WERE PROVIDED."  (Doc. 154-2 at 3–4.)  Mr. Coon's Second Response states: "[I]t is past ten y[ea]rs and [I] signed a non disclosure –privacy with a triple punitive damages clause auto-ped settlement."  (Doc. 154-3 at 3.)  Shea insists that Mr. Coon has not responded, noting that he has filed lawsuits in other courts and that he has represented that he receives income from disability or worker's compensation payments.  (Doc. 154 at 13.)

Interrogatory Nos. 12, 13, and 14 ask Mr. Coon to state each fact on which he bases his respective claims. (Doc. 154-1 at 4.) Mr. Coon has written responses to each question. (*See* Doc. 154-2 at 4; Doc. 154-3 at 3–4.) Shea asserts that its requests are simple, and describes Mr. Coon's answers as non-responsive. (*See* Doc. 154 at 13–17.)

Interrogatory Nos. 15 and 16 ask Mr. Coon to identify witnesses with knowledge of the facts surrounding his claims, and statements they might have made. (*See* Doc. 154-1 at 4–5.) Mr. Coon states in his First Response that he has already filed more than 425 pages of documents, including affidavits. (*See* Doc. 154-2 at 4.) In his Second Response, Mr. Coon states "[I] will do my best" and supplies a list of names of certain individuals, as well as brief descriptions of the topics of the testimony some of them might give. (Doc. 154-3 at 4–5.) Shea asserts that Mr. Coon's responses are incomplete because for many of the people that Mr. Coon has identified, he does not supply a brief description of the nature of their knowledge. (Doc. 154 at 20.) Shea also faults Mr. Coon for not supplying a list of statements with specific information about each statement, and for instead including non-relevant information. (*Id.* at 22.)

### C.   Shea's Production Requests and Mr. Coon's Response

In addition to the Interrogatories discussed above, Shea has requested production of seven categories of documents:

    1.    Produce any documents you were asked to identify and/or produce in response to any of the preceding interrogatories.

    2.    Produce records and reports of any doctor, health care provider, therapist, psychotherapist, or psychologist who may have treated or examined Plaintiff for the ten years prior to the accident to the present for any condition whatever, including treatment as a result of alleged emotional

distress and/or psychological damages for which this suit has been brought. **Plaintiff is specifically requested to produce copies of all evaluations conducted by any medical professional related to his alleged emotional damages claimed in this suit, including but not limited to the report supposedly produced by a licensed doctoral psychologist.**

3.     Produce records for any hospital, clinic or institution in which Plaintiff has been confined for the ten years prior to the accident to the present for any condition whatever, including alleged emotional distress and/or psychological damages for which this suit has been brought.

4.     Produce medical bills of any type and nature as a result of the alleged emotional distress and/or psychological damages for which this suit has been brought.

5.     Produce bills of any type or nature, other than for medical expenses, alleged to have arisen as a result of Defendant Shea's alleged conversion, overcharging, and/or grave desecration.

6.     Produce all documents supporting any claim you might have for damages as a result of Defendant Shea's alleged conversion, overcharging, and/or grave desecration, including any photographs, videos, or other similar depictions of the alleged desecration.

7.     Produce copies of all "depositions" referenced in your March 10, 2014 email to counsel for Defendant Shea, as well as copies of any written statements made by any individual regarding or relating to Defendant Shea's alleged conversion, overcharging, and/or grave desecration.

(Doc. 154-1 at 5.)

Mr. Coon's First Response was to state that he has filed "more than 425 pages of documents" in the case, including affidavits, medical records, x-ray results, photographs, and documents from New York state court.  (Doc. 154-2 at 4–5.)[5]  In his Second Response, Mr. Coon states:

---

[5]  It is unclear precisely what Mr. Coon means when he refers to "425 pages," although it is no exaggeration to state that Mr. Coon has filed hundreds of pages of documents in this case.

> I filed each and every document I have received in this case, I filed each and every medical document I have received from my own doctors. I do not understand what is needed more of me. . . . I do not have a single piece of paper that Defendants' counsel wasn't given. I am broke. I have nothing left. I copied everything for Shea. I am willing to allow them to come and make copies of it all over again if they want. . . . I am confused. I am trying. I am sorry.

(Doc. 154-3 at 6–7 (typographical, punctuation, and spelling errors corrected).) In a July 18, 2014 email, Mr. Coon advised Shea to "send papers[;] I will sign th[e]m," presumably indicating a willingness to authorize the release of records from medical providers. (Doc. 174-1.) But Mr. Coon states that he will not authorize the release of records from before February 1, 2010 (i.e., from before the time of Ms. Hunt's death). (Doc. 174-2.)

On August 4, 2014, Mr. Coon filed an "Update of Discovery" (Doc. 183) and a "Respon[s]e to [Defendants'] Discovery Complaint for 11th Time" (Doc. 184). In the "Update," Mr. Coon says he is making a "3rd attempt" to make Shea happy, and supplies a list of eleven medical providers for the time frame between February 1, 2010 and July 10, 2014. (Doc. 183 at 1–3.) In the "Response," Mr. Coon states that he has filed "all he has," and asserts that it is Shea's responsibility to "send medical aut[h]o[r]izations for me to sign." (Doc. 184 at 1–2.) Mr. Coon also reiterates that he will not disclose any medical records from prior to February 1, 2010, and indicates that he has instructed his doctors to call him "before they do anything." (*Id.*)

Shea filed responses to Mr. Coon's August 4 filings on August 14, 2014. In response to the "Update of Discovery," Shea asserts that it is entitled to know Mr. Coon's history of claims, and is entitled to pre-2010 medical records "relating to Plaintiff's

baseline emotional state stemming from any existing mental and physical problems."
(Doc. 196 at 1–2.)  In response to Mr. Coon's August 4 "Response," Shea disputes Mr.
Coon's assertion that he has filed "all he has," reasoning that Mr. Coon is not entitled to
unilaterally determine that none of his pre-2010 medical records are within the scope of
discovery.  Shea also argues that "Plaintiff should have produced the claimed 'contract'
with a different funeral home and evidence of his legal capacity to act as an administrator
as part of his initial disclosures."  (Doc. 195 at 2.)

### D.    Mr. Coon is not in Compliance with his Discovery Obligations

The above discussion shows that Mr. Coon is not in compliance with his discovery
obligations.  He has failed to comply with his obligation to supply initial disclosures.  He
has attempted to raise objections to some of Shea's written interrogatories and production
requests, but has not supplied a privilege log or sought a protective order under Rule
26(c).  Moreover, in many cases he has failed to supply responsive answers to
unobjectionable questions.  For example, in response to Interrogatory 2, Mr. Coon has
not listed each and every injury, illness, or condition caused or aggravated by Shea's
alleged wrongdoing—it is not even clear whether he is asserting "garden-variety"
emotional distress" or something more serious.  *In re Sims*, 534 F.3d 117, 141 (2d Cir.
2008).[6]  Mr. Coon has also not described his prior personal injury, disability, or

---

[6]  Mr. Coon's decision not to disclose an expert suggests perhaps he is only asserting garden-variety emotional distress.  On the other hand, Mr. Coon seeks millions of dollars in damages, which is difficult to square with a garden-variety claim.  *See Quinby v. WestLB AG*, No. 04 Civ. 7406(WHP), 2008 WL 3826695, at *3 (S.D.N.Y. Aug. 15, 2008) ("'Garden variety' emotional distress claims lacking extraordinary circumstances and without medical corroboration generally merit $30,000 to $125,000 awards.").

emotional damages claims in response to Interrogatory 11.[7]  Additional details regarding

Mr. Coon's noncompliance are discussed below.

## II.    Efficacy of Lesser Sanctions

Given Mr. Coon's *in forma pauperis* status (*see* Doc. 2), he would be unable to

pay a monetary sanction.  The admonishment of a court order has proven insufficient.

Other sanctions, such as striking portions of the pleadings or ordering conclusions on

certain facts, claims, or defenses, seem unworkable in this case.  It is difficult to imagine

an effective sanction other than dismissal.

## III.    Duration of Noncompliance

Mr. Coon's noncompliance after mid-April 2014 precipitated Shea's Motion to

Compel and the Court's May 12, 2014 Discovery Order setting a June 2, 2014 deadline.

Mr. Coon secured an extension of time to June 16, 2014, but was again not in compliance

after that date.  That period of noncompliance weighs in favor of dismissal.  *See Agiwal*

*v. HSBC Mortg. Corp.*, 469 F. App'x 69, 70 (2d Cir. 2012) (affirming dismissal for

willful noncompliance with discovery orders where conduct included noncompliance for

---

[7] He apparently refuses to discuss his "auto-ped" settlement due to a non-disclosure agreement in that case.  As Mr. Coon has previously stated, he "suffers from a massive injury being run over in my home by a lady who had Alzheimer[']s on October 29, 2002 which also includes a brain injury with 15 to 20 years of memory loss, 1985 thru 2002." (Doc. 40 at 3–4 (all-caps writing converted to lowercase).) (*See also, e.g.*, Doc. 40 at 11–12 ("Coon suffered a significant mental health-brain injury in auto-pedestrian accident on Oct. 29 2002." (all-caps writing converted to lowercase); Doc. 127 at 14–15 (recounting the "auto-peds accident"); Doc. 199 at 13–14.)  The non-disclosure agreement is unlikely to be a bar to discovery of the facts that gave rise to the settlement (which Mr. Coon has already summarized), or to facts relating to Mr. Coon's medical condition and treatment for the injuries he sustained in the accident.  *See Chambers v. Capital Cities/ABC*, 159 F.R.D. 441, 442 (S.D.N.Y. 1995) (non-disclosure agreement could not preclude discovery in federal litigation).  More importantly, the Court is aware of numerous other cases filed by Mr. Coon that he should have provided in response to Interrogatory 11.  (*See* Doc. 212 at 17–21.)

a period of approximately three months); *Granados v. Gold Coast Tennis, Inc.*, No. 12-CV-4016 (JFB)(WDW), 2013 WL 3766582, at *2 (E.D.N.Y. July 16, 2013) (concluding that noncompliance for period of several months was willful); *In re Consolidated RNC Cases*, 2009 WL 130178, at *8 (S.D.N.Y. Jan. 8, 2009) (noncompliance for period of three to four months was sufficient to warrant dismissal).

## IV.    Warnings

Here, Mr. Coon has been warned clearly and repeatedly of the potential consequences of noncompliance.  That factor is therefore no obstacle to dismissal.

## V.    Willfulness or Reason for Noncompliance

Dismissal with prejudice under Rule 37 is only appropriate if the Court finds "willfulness, bad faith, or any fault by the non-compliant litigant."  *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (per curiam) (internal quotation marks omitted).  The concepts of "willfulness" and "bad faith" imply a "deliberate disregard of the lawful orders of the court."  *Cine*, 602 F.2d at 1067.  "Fault" is a more "amorphous" concept, but at a minimum it covers "gross professional negligence."  *Id.* at 1067–68.  On the other hand, dismissal is not appropriate "'when it has been established that failure to comply has been due to inability, and not to willfulness, bad faith, or any fault of petitioner.'"  *Id.* at 1066 (quoting *Societe Internationale pour Participations Industrielles et Commerciales v. Rogers*, 357 U.S. 197, 212 (1958)).  Notably, although *pro se* plaintiffs "often frustrate the process of litigation . . . dismissal is justified only when they do so deliberately, not when they do so through misunderstanding."  *Salahuddin v. Harris*, 782 F.2d 1127, 1132 (2d Cir. 1986) (internal quotation marks omitted).

Shea asserts that Mr. Coon's noncompliance is willful because Mr. Coon has refused to provide relevant documents in his possession.  (Doc. 174 at 3; Doc. 197 at 2–3.)  Mr. Coon maintains that he is "trying" to comply and that he has given Shea "everything I have."  (Doc. 166 at 3.)  According to Mr. Coon:

> I believe I have done the best I can do with my injuries and my disabilities to help do what I need to do.  I do try[.]  I offered to allow Mr. Wadhams to cop[]y my whole case file[.]  I do not have the funds to pay to copy my medical files it[']s several thousand dollars.

(*Id.* at 4.)  Indeed, Mr. Coon has repeatedly represented that he "has suffered a severe brain injury causing significant memory loss and motion, hearing & sight loss, causing misprinting and such."  (Doc. 140 at 1.)  Mr. Coon insists that he has given Shea the names and addresses of "each and every [doctor] I have seen."  (Doc. 199 at 4.)

The Court begins with Mr. Coon's assertion that he is unable to supply a complete copy of his medical records because it is too expensive.  Mr. Coon has been granted *in forma pauperis* status, but that status does not waive "litigation expenses unless provided by statute."  L.R. 3(c).  Still, generating copies of Mr. Coon's medical records is not a litigation expense that Mr. Coon must bear.  *See Obiajulu v. City of Rochester, Dep't of Law*, 166 F.R.D. 293, 297 (W.D.N.Y. 1996) (stating that Rule 34 allows a party to "inspect and copy" relevant documents, and "does not require a responding party to pay for copying costs of voluminous materials").  Mr. Coon might be unable to afford to make a complete copy of his medical records, but he is not, in fact, required to incur those copying costs.

The more difficult question is whether Mr. Coon's failure to comply is due to inability as a result of his alleged brain injury and memory loss.  Certainly his ability to understand and complete the tasks required in discovery is a relevant consideration with respect to the willfulness factor.  *See Hevner v. Vill. East Towers, Inc.*, 293 F. App'x 56, 58 (2d Cir. 2008) (vacating dismissal for failure to prosecute, noting that "plaintiff's [mental health] disability, which was known to defendants before discovery began, impairs her performance in many tasks that others find routine"); *Abram v. City of Buffalo*, No. 04-CV-441S, 2008 WL 5191675, at *4 (W.D.N.Y. Dec. 10, 2008) (where *pro se* plaintiff was "extremely confused" and did not understand discovery requests, her failure to respond was not willful or deliberate).  For instance, Mr. Coon indicates that, due to his memory loss, he does not remember his prior lawsuits, (*see* Doc. 199 at 9), so that might explain his sparse response to Interrogatory 11.

Moreover, it seems possible that a brain injury could explain why many of his responses are incoherent or nonresponsive.[8]  Nevertheless, Mr. Coon's filings in this case demonstrate that he is capable of understanding at least the basic arc of litigation, including the fact that he must comply with his discovery obligations.  For example, Mr. Coon has himself complained that Shea's production in discovery has been inadequate. (Doc. 82 at 1.)  Other examples of Mr. Coon's understanding include his purported ability to employ discovery devices such as Rule 31 depositions by question (*see id.*), and his own Motion for Summary Judgment (Doc. 105).  Mr. Coon is by no means unfamiliar

---

[8] Indeed, the Court has noted that Mr. Coon's filings are frequently incoherent.  (*See* Doc. 212 at 13.)

with the applicable rules of procedure generally or his discovery obligations in particular.

The Court therefore turns to the specific discovery failures that Shea has highlighted.

### A.    Withheld Documents

Shea asserts that Mr. Coon is withholding six categories of documents that Shea

says are in Mr. Coon's possession (because Mr. Coon has referred to them in prior

filings) and are relevant and discoverable:

> (a) a "deposition by question," "CV," and "medical-psychology examination" by Plaintiff's alleged psychologist (Doc. 82 at 1); (b) "some of my medical stuff and estate information is private and work produc[t] and is also for trial if we have to have a trial on damages" (Doc. 110 at 5); (c) refuses to provide any information into pre-incident medical records (Doc. 184 at 1); (d) notwithstanding his representation to the Court that he would sign "authorizations" to obtain his post-incident medical records, he has apparently instructed his doctors to "call him before they do anything" (Doc. 184 at 2); (e) "a ton of jmh personal docs, financial do[c]s etc, threats to sue" (Doc. 185 at 1); and (f) a "preliminary report" from the Saratoga Psychology Center (Doc. 190 at 3).

(Doc. 197 at 2–3 (first alternation in original).) The bulk of these allegedly withheld

documents appear to be related to Mr. Coon's physical or mental health history.  Mr.

Coon does not respond to this issue with particularity, but it appears that he believes that

some or all of the documents at issue are privileged or otherwise not discoverable.

Mr. Coon has failed, however, to assert the alleged privilege properly.  *See*

*Edwards v. Immigration & Naturalization Serv.*, 59 F.3d 5, 8 (2d Cir. 1995) ("[P]ro se

litigants generally are required to inform themselves regarding procedural rules and to

comply with them.").  He has withheld information without providing a privilege log as

required by Rule 26(b)(5)(A).  And he has not sought a protective order under Rule 26(c).

Instead, he has unilaterally withheld documentation from Shea, and continues to do so

while the Court's order compelling compliance is in effect, and in the face of multiple requests from Shea.

The Court inquired of Shea at the September 25, 2014 hearing as to why Shea had not supplied Mr. Coon with authorizations for him to sign.  Shea answered that it was because Mr. Coon had not sufficiently identified his medical providers, and because Mr. Coon's apparent willingness to sign authorizations is belied by his instruction to his doctors to call him before they do anything.  Mr. Coon has supplied multiple but different lists of medical providers, which makes it difficult to determine whether any list is complete.  (*See* Doc. 105-19 at 5–6; Doc. 183 at 2–3; Doc. 199 at 11–12.)  More importantly, Mr. Coon's instruction to his doctors to call him before they do anything is indicative of continued obstructionism.

### B.    Initial Disclosures

Shea notes that Mr. Coon has still not provided initial disclosures.  (Doc. 198 at 2.) Even after being ordered to do so, Mr. Coon has not made initial disclosures to Shea. Perhaps he thinks that the materials he has already supplied (e.g., in support of his summary judgment motion) are sufficient.  Indeed, some of the information that Mr. Coon has supplied arguably fits within one or more of Rule 26(a)(1)(A)'s categories. However, the Court has found no authority for the proposition that a party can satisfy its Rule 26(a)(1)(A) obligations by filing materials under other procedural devices.  And whatever Mr. Coon's motivation, it remains the case that he has persistently failed to file initial disclosures in the face of requests from Shea and this Court's order.

Moreover, even if the materials that Mr. Coon has filed could constitute initial disclosures, they are incomplete.  For instance, he has not disclosed the alleged contract with Ackley's funeral home.  Nor has he supplied any documentary evidence of his appointment as a voluntary administrator of Ms. Hunt's estate—evidence that this Court has held that Mr. Coon must produce to prevail on his conversion and mischarge claims. (*See* Doc. 178 at 5 & n.2.)  Mr. Coon has been asked and ordered to supply initial disclosures, but he has still refused to do so.  The Court concludes that this is also evidence of willfulness.

In light of the above, the Court concludes that this is not "a case involving the typical *pro se* plaintiff who lacks the capacity to comply with legitimate court directives regarding discovery without assistance."  *Johnson v. U.S. Dep't of Homeland Sec.*, No. 3:09-CV-975 (TJM/DEP), 2011 WL 2559560, at *7 (N.D.N.Y. Apr. 29, 2011), *adopted* 2011 WL 2559545 (N.D.N.Y. June 27, 2011).  Here, similar to the *Johnson* case, Mr. Coon's "non-compliance with the court's orders cannot be tolerated, particularly given the ongoing prejudice to defendants resulting from the passage of nearly two years since this action was commenced without initial disclosures . . . ."  *Id.*

## VI.    Other Considerations

As the Second Circuit has noted, the four Rule 37 factors discussed above are not exclusive.  *World Wide Polymers*, 694 F.3d at 159.  Shea urges the Court to consider two additional factors: (1) the prejudice to Shea, and (2) the merits of Mr. Coon's claims. (Doc. 197 at 5–6.)

### A.    Prejudice to Shea

Shea argues that it is prejudiced by Mr. Coon's failure to comply with his obligations and the Court's discovery orders, both in terms of its ability to prepare dispositive motions as well as the expense of attorneys' fees.  The Second Circuit has recognized that one purpose of Rule 37 sanctions is "to protect other parties to the litigation from prejudice resulting from a party's noncompliance with discovery obligations."  *S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 149 (2d Cir. 2010).  The Court agrees that in this case Mr. Coon's noncompliance has prejudiced Shea.  Without even the most basic initial disclosures, Shea is left in the untenable position of essentially having to guess at the appropriate avenues for discovery, and even the basis for Mr. Coon's claims.

### B.    Merits of Mr. Coon's Claims

Shea asserts that Mr. Coon's claims lack merit, and that that is an additional factor in favor of dismissal under Rule 37.  In the context of dismissals under Rule 41(b), other courts have remarked that "'it is entirely proper for the judge to consider the likely merits of the suit in deciding whether to dismiss it for failure to prosecute.'"  *Dosunmu v. United States*, 361 F. Supp. 2d 93, 99 (E.D.N.Y. 2005) (quoting *Ball v. City of Chicago*, 2 F.3d 752, 759 (7th Cir. 1993)).  To the extent the same is true with respect to Rule 37, the Court concludes that this factor also favors dismissal.

The Court has stated that, to prevail on his claims for conversion and mischarge, Mr. Coon must supply evidence that he is the voluntary administrator of Ms. Hunt's estate.  (Doc. 178 at 5.)  After more than a year of litigation, Mr. Coon has still not

produced even that basic evidence.  And, despite Mr. Coon's assertion that he has presented all the evidence he has, he has still failed to present any evidence that Shea's temporary removal of the grave marker caused the emotional distress that he claims.  (*See* Doc. 204 at 2.)  For that reason, the Court previously observed that Mr. Coon's emotional-distress claim was not sufficiently meritorious to warrant the appointment of counsel.  (*Id.*)  And, in addition to that causation problem, the Court is skeptical that the temporary removal of the marker "may be regarded as so extreme and outrageous as to permit recovery" on a theory of intentional infliction of emotional distress.  *Cruz v. HSBC Bank USA, N.A.*, No. 14-990-cv, 2014 WL 4783383, at *2 (2d Cir. Sept. 26, 2014) (applying New York law).

Regarding Mr. Coon's claims that Mark Shea did more than simply remove the marker for a short period of time—i.e., that he damaged the surface and objects placed at the grave site—the Court previously declined to reach the question of the admissibility of Mr. Coon's evidence.  (Doc. 164 at 8.)  The Court here observes that much of Mr. Coon's evidence either does not prove the alleged desecration,[9] or is inadmissible hearsay.[10]  To the extent that Mr. Harwood's statement that Mark Shea had admitted to him that Shea

---

[9] For example, Mr. Coon has produced a number of photographs, but they were apparently taken in 2014—long after the purported gravestone conversion in 2012.  (*See* Doc. 105-21.)  Mr. Coon also repeatedly refers to unrelated proceedings against Mark Shea before the Vermont Office of Professional Regulation.  (E.g., Doc. 160 at 3; 160-2; 199 at 15.)  Even assuming that Mr. Coon could introduce evidence of those unrelated proceedings, it would not be proof of wrongful conduct in this case.

[10] For example, Mr. Coon relies heavily on statements by his uncle, Walter Harwood, Sr., to the effect that the cemetery groundskeeper told him that Shea had caused the damage.  (Doc. 105-7 at 1–2; Doc. 105-8 at 3.)

had "desecrate[ed] all four graves" is not hearsay under Fed. R. Evid. 801(d)(2)(A), it is an extremely slender reed on which to base such a serious claim.

### C.    Vexatious Litigant

One further factor is worth mentioning.  The Court has recently ruled that Mr. Coon is a vexatious litigant, and has entered an injunction barring him from filing new federal suits in the District of Vermont without obtaining prior leave from the Court. (Doc. 212 at 16.)  That ruling by itself is not a basis for granting Shea's Rule 37 Motion. *See Salahuddin*, 782 F.2d at 1133 ("[L]itigiousness by itself is neither semantically nor legally equivalent to bad faith.").  However, the Court concludes that this factor also weighs in favor of dismissal.  Mr. Coon's pattern of litigation is vexatious, and his filings in this case continue that pattern.  Having reviewed the hundreds of pages of materials that Mr. Coon has filed in this case, the Court can only conclude that Mr. Coon is willfully manipulating the litigative process, causing discovery to devolve into precisely the kind of "pretrial quagmire" that sanctions are designed to halt.  *Cine*, 602 F.2d at 1064.

### <u>Conclusion</u>

For the reasons stated above, the Court GRANTS Shea's Motion to Dismiss (Doc. 154).  Judgment shall be entered for Defendant Shea Family Funeral Homes.

Dated at Burlington, in the District of Vermont, this 2nd day of October, 2014.

<u>/s/ John M. Conroy</u>
John M. Conroy
United States Magistrate Judge